# UNITED STATES DISTRICT COURT

## DISTRICT OF SOUTH DAKOTA

## NORTHERN DIVISION

| | | |
|---|---|---|
| **ALLEN RAINES and**<br>**ERLENE RAINES**, | ) | CIV. 08-1016 |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | |
| | ) | **REPORT** |
| **RONALD HOLLINGSWORTH,** | ) | **AND** |
| **LaDONNA HOLLINGSWORTH,** | ) | **RECOMMENDATION** |
| **JACK VON WALD,** | ) | |
| **TONY PORTRA, SCOTT MYREN,** | ) | |
| **MARK McNEARY,** | ) | |
| **LORI EHLERS,** | ) | |
| **KIMBERLY DORSETT,** | ) | |
| **LONALD L. GELLHAUS,** | ) | |
| **CARLYLE RICHARDS,** | ) | |
| **BILL GERDES, and** | ) | |
| **DOUGLAS KENNY, in all their** | ) | |
| **individual and official capacities,** | ) | |
| | ) | |
| Defendants. | ) | |

## INTRODUCTION

This matter is before the court on a complaint filed by plaintiffs Allen and

Erlene Raines, husband and wife, invoking the court's federal question

jurisdiction. See 28 U.S.C. § 1331. The Raineses assert various claims against

the defendants premised on 42 U.S.C. §§ 1983 and 1985, as well as other

federal and state statutes. Numerous motions are pending, filed by both

plaintiffs and defendants. Those motions have been referred to this magistrate

judge for a report and recommendation by Chief District Court Judge Karen E.

Schreier pursuant to 28 U.S.C. § 636(b)(1)(B).  See Docket No. 73.  The

following is this court's recommendation pursuant to that referral.

**FACTS**

**A.    Background**

Erlene Raines' aunt, Velma Hollingsworth, died and Allen Raines was

appointed the personal representative of Velma's estate in June, 2004.[1]  The

Raineses resided in Ohio at the time.  Velma's estate was being administered in

Aberdeen, South Dakota, in South Dakota State Court in the Fifth Judicial

Circuit.  South Dakota Circuit Court Judge Jack Von Wald was assigned to the

case.  Ronald Hollingsworth, Velma's son, was an heir and interested party in

the probate proceedings.  Ronald was represented by a private attorney, Lonald

Gellhaus.  Carlyle Richards, also a private attorney, represented other heirs of

Velma's estate.

In August, 2005, Judge Von Wald removed Allen as the personal

representative of Velma's estate pursuant to a motion made to that effect by

Mr. Richards and Mr. Gellhaus.  Judge Von Wald appointed Ronald in Allen's

place as the new personal representative of Velma's estate.

In September, 2005, Judge Von Wald entered default judgment against

Allen and Erlene Raines in Velma's probate estate proceedings.  In January,

2007, special prosecutor Mark McNeary brought criminal charges of

_____

[1]These facts are taken from the plaintiffs' original and amended
complaints filed in this case.

2

embezzlement, receiving stolen property, and grand theft against Allen and Erlene for actions they allegedly took in relation to Velma's estate. The Raineses were arrested in Ohio on a South Dakota state arrest warrant. They initially appeared in an Ohio state court before being brought to Aberdeen, South Dakota, to answer the charges.

On May 1, 2007, Allen made his initial court appearance in a South Dakota state court on these criminal charges. He was represented by court-appointed counsel, Bill Gerdes. Allen told his lawyer, Mr. Gerdes, that he believed there to be a conflict of interest on the part of the prosecution as one of the assistant prosecutors, Kimberly Dorsett, worked in the same office as Carlyle Richards, who had represented some of the heirs in Velma's probate proceedings.

On July 2, 2007, Allen and Erlene were arraigned on their criminal charges before Judge Von Wald. Both entered pleas of not guilty. On July 31, 2007, Judge Tony Portra, also a circuit court judge in the Fifth Judicial Circuit, released Erlene on bond with the condition that she be subject to electronic monitoring.

A trial date in the criminal matter was originally set for October 29, 2007, but was postponed by one of the prosecutors, Lori Ehlers, after she discovered a conflict of interest and requested that Mr. McNeary be appointed

as special prosecutor.[2]  Mr. Gerdes and Erlene's court-appointed counsel, Gina

Rogers[3], moved for dismissal of the charges against their clients based on the

argument that South Dakota's speedy trial act required dismissal due to the

postponement of the trial.

The circuit court judge denied the motion, holding that the time the

Raineses were held in Ohio on the South Dakota arrest warrant did not count

toward the speedy trial act deadline.  The court held that the speedy trial act

time began to run when the Raineses made their first court appearance in a

South Dakota state court.  An unsuccessful intermediate appeal was filed by

Mr. Gerdes and Ms. Rogers to the South Dakota Supreme Court on the speedy

trial act ruling.

The Raineses filed their first, verified complaint in this court on

August 28, 2008, at a time prior to their criminal trial taking place.  In general,

the complaint alleged that the defendants had violated plaintiffs' constitutional

rights and sought relief under 42 U.S.C. §§ 1983 and 1985.  The prayer for

relief contained in plaintiffs' original complaint asked that this court:  (1)

declare that the defendants in the state proceedings violated plaintiffs'

---

[2]Of course, the allegation that Mr. McNeary was brought on as a special prosecutor in the fall of 2007 conflicts with plaintiffs' earlier allegation that Mr. McNeary was the person responsible for instituting the criminal charges initially in January, 2007.  As stated earlier, these facts are garnered from plaintiffs' complaint.  The inconsistency is present in that document.

[3]Ms. Rogers was never named as a defendant in this civil action.

constitutional rights; (2) grant an injunction halting all further proceedings in state court against plaintiffs; (3) grant an injunction prohibiting the state court from continuing to require the Raineses to remain in Aberdeen, South Dakota, as a condition of their criminal bond; and (4) grant the plaintiffs an award of compensatory and punitive damages, together with costs and attorney fees.[4]

The Raineses' criminal jury trial took place in South Dakota state court on December 17, 18, and 19, 2008, and resulted in two felony convictions apiece for each of the plaintiffs. Following their state court convictions, and prior to their sentencing in state court, the Raineses filed a number of motions seeking this court's intervention in state court proceedings. See Docket Nos. 13, 18, 19, 21, and 22. Plaintiffs requested this court variously to transfer their criminal proceedings to Ohio courts, to grant an injunction preventing the state court from sentencing them, and to dismiss the guilty verdicts entered against them for alleged constitutional violations that took place during trial.[5] Id.

---

[4]Although the Raineses' complaint asked for attorney's fees, they appear in this matter *pro se* and have repeatedly informed the court that they lack legal training.

[5]Plaintiffs allege that their constitutional rights were violated because Mr. McNeary made an argument in his closing argument that referenced facts that were never introduced into evidence during the trial and that their right to confront and cross-examine witnesses at trial was violated. See Docket No. 19, 21. The documents filed at Docket 19 and 21 are duplicates of one another, with the exception that 19 is handwritten and 21 is typed.

The plaintiffs were then sentenced in state court on February 25, 2009. Erlene was sentenced to two years incarceration on each conviction and Allen was sentenced to five years incarceration on each conviction.

**B.      Plaintiffs' Amended Complaint**

Following the sentencing, the plaintiffs sought and received permission in this court to file an amended complaint. That document was filed on March 23, 2009.[6] <u>See</u> Docket No. 50. The amended complaint recited that Ronald Hollingsworth had died and that LaDonna Hollingsworth, who appears as a new defendant on the amended complaint, had succeeded Ronald as personal representative of Velma's estate.[7] The amended complaint also added Douglas Kenny as a new defendant and recited that Mr. Kenny was an Aberdeen policeman. Mr. Gerdes also appeared as a new defendant in the amended complaint.

The amended complaint asserts sixteen counts against the various defendants. The details of those counts are as follows.

---

[6]Although the amended complaint contains a "verification" by Allen, the court hesitates to characterize the complaint as a verified complaint as the verification states that the information is "true to the best of [Allen's] knowledge." The verification also lacks a notary public's seal and statement that the verification was made under oath.

[7]Even though plaintiffs recite the fact that Ronald had passed away, they nevertheless named him again as a defendant in the amended complaint.

### 1. Count One

Count one is asserted against Mr. Richards, Mr. Gellhaus, Judge Von Wald, Ronald, and La Donna. It asserts that these defendants deprived Allen Raines of his right to discharge claims [in Velma's probate estate] in his absolute discretion by the terms of Velma's will. The "FACTS" section of the amended complaint adds the allegation that these defendants did not follow the terms of Velma's will and exhibited a "high disregard for the truth." Plaintiffs allege in the "FACTS" section that "it was stated under color of law [that] the inventory of property [in the estate] had to be filed and completed within six months." Plaintiffs allege that defendants deprived him of his day in court and, accordingly, violated his due process rights. Citation is made to SDCL § 29A-3-706, U.S.C. Title § 242 and 42 U.S.C. § 1983.

### 2. Count Two

Count two is also asserted against Mr. Richards, Mr. Gellhaus, Judge Von Wald, Ronald, and La Donna. It asserts that these defendants deprived Allen Raines of his due process rights by removing Allen as personal representative of Velma's estate. Citation is made to SDCL § 22-3-8 and 42 U.S.C. § 1983.

### 3. Count Three

Count three is asserted against Mr. Richards, Mr. Gellhaus, Judge Von Wald, Ronald, and La Donna. It asserts that these defendants

conspired to fabricate false evidence before the grand jury in support of criminal charges against the plaintiffs. The "FACTS" section of the amended complaint adds that Mr. Gellhaus falsely told Mr. McNeary that the plaintiffs were "fugitives from justice," with the result that the plaintiffs were treated maliciously with regard to the criminal charges they were arrested on. Citation is made to SDCL § 22-3-8 and 42 U.S.C. § 1983.

### 4.    Count Four

Count four is asserted against Mr. Gellhaus, Judge Von Wald, Ronald, and La Donna. It asserts that these defendants deprived plaintiffs of their right to a jury trial on the probate matter by entering default judgment against them. The "FACTS" section of the amended complaint adds the allegation that the default judgment was based on a fabricated and false document related to Penn Treaty Insurance. Citation is made to SDCL § 15-6-55(b)(1); S.D. Const. Art. 6, § 6; U.S. Const. Amend. 7; 18 U.S.C. § 242; and 42 U.S.C. § 1983.

### 5.    Count Five

Count five is asserted against Mr. Gellhaus, Judge Von Wald, Ronald, and La Donna. It asserts that these defendants knowingly and willfully covered up their conspiracy plans to defraud the plaintiffs of their proper earnings. Citation is made to SDCL §§ 22-3-8 and 22-12A-16; 18 U.S.C. § 1001; and 42 U.S.C. § 1985.

### 6. Count Six

Count six is asserted against Mr. Gellhaus, Judge Von Wald, Douglas Kenny, Mark McNeary, Ronald, and La Donna.  It asserts that these defendants "created a false impression to deceive the plaintiffs in the grand jury hearing showing false intent and comitted [sic] perjury."  Citation is made to SDCL §§ 22-12A-16 and 22-30A-3; 18 U.S.C. § 1001; and 42 U.S.C. § 1983.

### 7. Count Seven

Count seven is asserted against Mr. Gellhaus, Judge Von Wald, Mr. Kenny, Mr. McNeary, Ronald, and La Donna.  It asserts that these defendants "conspired to deceived [sic] the plaintiffs in the grand jury hearing with false and misleading statements."  Citation is made to SDCL § 22-3-8 and 42 U.S.C. § 1985.

### 8. Count Eight

Count eight is asserted against Mr. Kenny alone.  It asserts that Mr. Kenny gave perjured testimony before the grand jury.  Citation is made to 18 U.S.C. § 1621.

### 9. Count Nine

Count nine is asserted against Mr. Gellhause and Mr. McNeary.  It asserts that these two defendants solicited Mr. Kenny to present perjured testimony to the grand jury, citing [18] U.S.C. § 1622.

### 10. Count Ten

Count ten is asserted against Judge Von Wald, Mr. Gellhaus, Mr. McNeary, Ronald, and LaDonna.  It asserts that these defendants secretly kept the plaintiffs from the grand jury selection process in violation of 18 U.S.C. § 6(b)(1).

### 11. Count Eleven

Count eleven is asserted against Judge Portra, Judge Von Wald, Lori Ehlers, Kimberly Dorsett, Ronald, and LaDonna.  It asserts that these defendants conspired to deny the plaintiffs equal privileges and immunities under the laws when they assigned Mr. McNeary as the special prosecutor. The "FACTS" section of the amended complaint alleges that Kimberly Dorsett, a new prosecutor who worked on the plaintiffs' criminal case, had a conflict of interest since she had [previously or contemporaneously] worked in Mr. Richards' office.  Because of this conflict, Ms. Ehlers asked that Mr. McNeary, who had recently left the prosecutor's office, be appointed as a special prosecutor in plaintiffs' case.  The "FACTS" section also recites that Judge Portra held that Mr. McNeary did not present a conflict of interest, as the plaintiffs had argued.  Citation is made to SDCL § 22-3-8 and 18 U.S.C. § 1985.

### 12.    Count Twelve

Count twelve is asserted against Judge Von Wald, Judge Myren, and
Mr. McNeary and alleges that these defendants conspired to deny the plaintiffs
equal privileges and immunities under the laws when denying plaintiffs' motion
to dismiss [in their criminal cases] for violation of the [South Dakota speedy
trial act] 180-day trial deadline.  The "FACTS" section of the amended
complaint alleges that Judge Myren rejected plaintiffs' request for dismissal
under the speedy trial act and punished them at sentencing for failing to plead
guilty instead of availing themselves of a jury trial.  Citation is made to SDCL §
22-3-8 and 18 U.S.C. § 1985.

### 13.    Count Thirteen

Count thirteen is asserted against Judge Von Wald, Judge Myren,
Mr. McNeary, and Bill Gerdes.  It alleges that these defendants denied
plaintiffs' due process rights by not allowing them to examine or cross-examine
witnesses (presumably at plaintiffs' criminal trials).  The "FACTS" section of the
amended complaint alleges that Mr. Gerdes refused to present evidence at trial
that would have shown that plaintiffs did not act with criminal intent.  The
"FACTS" section also alleges that all of the named defendants acted to falsely
impute [sic] criminal intent to plaintiffs' conduct and to injure the plaintiffs in
their profession and otherwise.  Citation is made to 18 U.S.C. § 1983.

### 14. Count Fourteen

Count fourteen is asserted against Judge Von Wald, Judge Myren, Mr. McNeary, and Mr. Gerdes.  It alleges that these defendants conspired to deny the plaintiffs' due process rights by not allowing them to examine or cross-examine witnesses.  Citation is made to 18 U.S.C. § 1985.

### 15. Count Fifteen

Count fifteen is asserted against Ronald, LaDonna, Judge Von Wald, Mr. Gellhaus, Mr. Richards, Mr. McNeary, Ms. Ehlers, Ms. Dorsett, Judge Portra, Judge Myren, Mr. Gerdes, and Mr. Kenny.  It alleges that these defendants "conspired to kidnap the plaintiffs with perjury, false and misleading testimony and by color of law to hold for payment."  Citation is made to 18 U.S.C. § 1203 and "U.S.C.A. Title 242."

### 16. Count Sixteen

Count sixteen is asserted against Ronald, LaDonna, Judge Von Wald, Mr. Gellhaus, Mr. Richards, Mr. McNeary, Ms. Elhers, Ms. Dorsett, Judge Portra, Judge Myren, Mr. Gerdes, and Mr. Kenny.  It alleges that these defendants "conspired to create thief [sic] by deception with the intent to promote the carrying on of specified unlawful activity by obtaining criminally derived property under color of official right."  Citation is made to SDCL § 22-30A-16 and 18 U.S.C. § 1951.

In plaintiffs' prayer for relief, they seek compensatory and punitive damages, costs and attorney fees. They also seek a declaration that the acts and omissions carried out in the plaintiffs' criminal cases and in Velma's probate proceeding as described in the amended complaint are void. Plaintiffs further seek an order dismissing the state of South Dakota's criminal cases against the plaintiffs on the grounds that they are unconstitutional.

After the filing of the amended complaint, Plaintiffs also filed a motion seeking removal of their state court proceedings to this court pursuant to 28 U.S.C. §§ 1443 and 1446(c)(1). <u>See</u> Docket Nos. 57 and 58.[8] No appeal is currently pending before the South Dakota Supreme Court in Velma's probate case or in Allen or Erlene's criminal cases and the cases have been concluded at the circuit court level.[9]

All of the named defendants except Ronald and LaDonna Hollingsworth have filed motions to dismiss.[10] These, as well as the plaintiffs' motions described above, are before the court. The court recommends granting each of

---

[8]The documents filed at Docket Nos. 57 and 58 are duplicates of one another.

[9]Appeals were filed in the Raineses' criminal cases, but those appeals have been dismissed.

[10]Ronald is deceased. LaDonna is the only defendant to appear *pro se*. She has filed an answer, but has not made a motion to dismiss nor joined in any motion to dismiss filed by any other defendant.

the defendants' pending motions and denying each of the plaintiffs' motions,

for the reasons discussed below.

## DISCUSSION

### A.    Standard for Ruling on Motions Pursuant to Fed. R. Civ. P. 12(b)(6)

All of the defendants' motions are based on Fed. R. Civ. P. 12(b)(6), which

provides for dismissal if the plaintiff has failed to state a claim upon which

relief can be granted.  The United States Supreme Court has recently

addressed the standard that district courts are to apply to motions to dismiss

under Rule 12(b)(6).  That standard is described in Bell Atlantic Corp. v.

Twombly, 550 U.S. 544 (2007), and Ashcroft v. Iqbal, ___ U.S. ___, 129 S. Ct.

1937 (2009).

Twombly involved a class action lawsuit brought by a putative class of

subscribers of local telephone and/or high speed internet services against

various Incumbent Local Exchange Carriers (hereinafter "ILECS").  Twombly,

550 U.S. at 548.  ILECS are regional service monopolies formed after the 1984

divestiture of AT &T's local telephone business.  Id.  The divestiture also formed

an independent long-distance marker from which the ILECS were excluded.  Id.

In 1996, Congress passed the Telecommunications Act, 110 Stat. 56, and

withdrew approval of the ILECs' monopolies.  Id.  After this point, the ILECS

were permitted to enter the public market for long-distance service, conditioned

upon each ILEC's "obligation . . . to share its network with competitors," called

"competitive local exchange carriers" (CLECs).  Id. (quoting Verizon

Communications Inc. v. Law Offices of Curtis v. Trinko, LLP, 540 U.S. 398, 402

(1999)).

The plaintiff class brought an antitrust suit under § 1 of the Sherman

Act, which prohibits "[e]very contract, combination in the form of trust or

otherwise, or conspiracy, in restraint of trade or commerce among the several

States, or with foreign nations."  26 Stat. 209, as amended, 15 U.S.C. § 1

(2004).  The plaintiffs claimed that the ILECs unlawfully conspired to restrain

trade by inflating charges for telephone and Internet services in two ways.

Twombly, 550 U.S. at 550.  First, the plaintiffs alleged that the ILECs engaged

in "'parallel conduct' in their respective service areas to inhibit the growth of

upstart CLECs"; and second, that the ILECs agreed to "refrain from competing

against one another," evidenced (according to the plaintiffs) by the ILECs'

"common failure" to pursue attractive business opportunities in contiguous

markets and by a statement by one ILEC's chief executive officer that

competing in another ILEC's territory wasn't "right."  Twombley, 550 U.S. at

550-51.

The complaint phrased its allegations in another way as well:  "Plaintiffs

allege upon information and belief that [the ILECs] have entered into a

contract, combination or conspiracy to prevent competitive entry in their

respective . . . services markets and have agreed not to compete with one

another and otherwise allocated customers and markets to one another." Id.
(quoting Amended Complaint at ¶ 51, App. 27, <u>Twombly v. Bell Atlantic Corp</u>.,
313 F.Supp.2d 174 (S.D.N.Y. 2003)(No. 02 Civ. 10220 (GEL)).

The United States District Court for the Southern District of New York
dismissed the complaint, holding that allegations of parallel business conduct,
standing alone, did not state a claim under § 1 of the Sherman Act. <u>Twombly</u>,
550 U.S. at 552. The district court held that the plaintiffs were required to
allege additional facts tending to "exclude independent, self-interested business
conduct as an explanation for the parallel conduct." <u>Id.</u> The court held that
mere allegations of parallel business conduct, without more, were merely
conclusory and did not suffice to state a claim under § 1 of the Sherman Act.
<u>Id.</u>

The Court of Appeals for the Second Circuit reversed, holding that the
district court applied the wrong standard in determining whether plaintiffs
failed to state a claim under § 1 of the Sherman Act. <u>Id.</u> at 553 (quoting
<u>Twombly v. Bell</u>, 425 F.3d 99, 114 (2d Cir. 2005). The Court of Appeals held
that an antitrust claim based on parallel conduct did not require plaintiffs to
plead "plus factors" in order to survive a Rule 12(b)(6) motion. <u>Id.</u> Although
the Court of Appeals held that plaintiffs were required to plead facts that
include conspiracy or agreement "among the realm of 'plausible' possibilities in
order to survive a motion to dismiss," it invoked <u>Conley</u> and said that to

properly dismiss a claim under Rule 12(b)(6), the court "would have to conclude that there is *no set of facts* that would permit a plaintiff to demonstrate that the particular parallelism asserted was the product of collusion rather than coincidence." Twombly, 425 F.3d at 114 (emphasis added) (citing Conley v. Gibson, 355 U.S. 41, 45-46 (1957)). The court determined that the defendant ILECs failed to satisfy the "no set of facts" standard, and accordingly reversed the district court's ruling. Twombly, 550 U.S. at 553.

The Supreme Court granted certiorari and reversed, abrogating Conley's "no set of facts" language. Id. Instead, the Court adopted a standard by which plaintiffs must plead "only enough facts to state a claim to relief that is *plausible* on its face." Id. at 570 (emphasis added). The Court noted that the Sherman Act prohibits only those restraints of trade "effected by a contract, combination, or conspiracy" and stated that the relevant inquiry was thus whether the challenged conduct "stem[s] from independent decision or from an agreement, tacit or express." Id. at 554 (quoting Theatre Enterprises, Inc. v. Paramount Film Distributing Corp., 346 U.S. 537, 540 (1954)). The Court indicated that businesses in a concentrated market commonly engage in conscious parallel conduct due to "shared economic interests and their interdependence with respect to price and output decisions" and this conduct, by itself, is not unlawful. Twombly, 550 U.S. at 553-54 (quoting Brooke Group

Ltd. v. Brown & Williamson Tobacco Corp., 509 U.S. 209, 227 (1993)). The Court then found that the acts undertaken by the defendant ILECs constituted "interdependent parallelism," which was not sufficient to establish the contract, combination, or conspiracy requirement imposed by the Sherman Act. Id. at 554.

The Court then discussed the applicability of Federal Rule 8(a)(2) to claims brought under the Sherman Act. Id. at 554-55. According to Rule 8, a plaintiff must plead only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The Court acknowledged that a complaint does not need "detailed factual allegations" to survive a motion to dismiss, but emphasized a plaintiff's obligation to provide the grounds for his entitlement to relief as requiring more than a mere recital of the elements of his cause of action. Twombly, 550 U.S. at 555 (citing Papasan v. Allain, 478 U.S. 265 (1986)). The Court imposed a "plausibility standard" and held that a claim under § 1 of the Sherman Act "requires a complaint with enough factual matter (taken as true) to suggest that an agreement was made." Twombly, 550 U.S. at 556. The Court rejected the notion that conclusory allegations of agreement were enough to survive a 12(b)(6) motion to dismiss a claim under the Sherman Act. Id. at 556-57. The Court explained, "[t]he need at the pleading stage for allegations plausibly suggesting (not merely consistent with) agreement reflects the threshold requirement of Rule 8(a)(2) that the

'plain statement' possess enough heft to 'sho[w] that the pleader is entitled to relief.'" Id. at 557 (quoting Fed. R. Civ. P. 8(a)(2)). The Court said the plaintiff must enhance his complaint with more specific factual allegations in order to cross the line between possibility and plausibility of entitlement to relief. Id.

In 2009, the Supreme Court decided Ashcroft v. Iqbal, and affirmatively applied to all civil actions the standard set forth in Twombly for determining whether a complaint is sufficient to survive a motion to dismiss. Ashcroft v. Iqbal, ___ U.S. ___ , 129 S.Ct. 1937 (2009). Ashcroft put to rest any doubt whether Twombly was to be applied exclusively to antitrust litigation, or whether it had broader application to other civil cases. Because Twombly interpreted and applied Federal Rule 8, the Ashcroft Court said, Twombly was properly applied to "all civil actions and proceedings in the United States district courts." Id. at 1953 (citing Fed. R. Civ. P. 1). Twombly thus delineates the proper pleading standard not only for antitrust cases, but for all civil actions.

Ashcroft involved Javaid Iqbal, a Muslim Pakistani who was arrested on criminal charges in the United States following the September 11, 2001, terrorist attacks. Ashcroft, 129 S.Ct. at 1942. Iqbal claimed his constitutional rights were violated by governmental actors while he was in custody, and he brought suit against various federal officials, including John Ashcroft, former Attorney General of the United States, and David Mueller, the Director of the

Federal Bureau of Investigation ("FBI").  Id.  Iqbal's complaint alleged that

Ashcroft and Mueller "adopted an unconstitutional policy that subjected [Iqbal]

to harsh conditions of confinement on account of his race, religion, or national

origin" in violation of Iqbal's rights under the First and Fifth Amendments to

the Constitution.  Id. at 1943, 1944;  See ¶ 96, App. to Pet. for Cert., at 172a-

173a.

Ashcroft and Mueller moved to dismiss the complaint pursuant to

Federal Rule 12(b)(6), for Iqbal's "failure to state sufficient allegations to show

their own involvement in clearly established unconstitutional conduct."

Ashcroft, 129 S.Ct. at 1944.  The United States District Court for the Eastern

District of New York denied the motion.  Id.;  See Elmaghraby v. Ashcroft, No.

04-01809, 2005 WL 2375202 (E.D.N.Y. Sept. 27, 2005).  The district court, in a

decision rendered prior to Twombly, relied on Conley v. Gibson to hold that "it

cannot be said that there [is] no set of facts on which [Iqbal] would be entitled

to relief as against" Ashcroft and Mueller.  Id. (citing Conley v. Gibson, 355 U.S.

41 (1957)).  Petitioners Ashcroft and Mueller filed an interlocutory appeal to the

United States Court of Appeals for the Second Circuit and, while the appeal

was pending, the Supreme Court decided Twombly.  Id.;  See Twombly v. Bell,

550 U.S. 544 (2007).

In deciding petitioners' case, the Court of Appeals discussed Twombly at

length and found that the decision required the court to apply a "flexible

'plausibility standard,' " rather than a universal standard of heightened fact pleading.  Iqbal v. Hasty, 490 F.3d 143, 157-58 (2d Cir. 2007).  The Court of Appeals noted the Twombly Court's disavowal of Conley's "no set of facts" language and explained that the Twombly approach "obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim *plausible*."  Id. (emphasis in original); See Twombly, 550 U.S. at 545-46.  However, the Court of Appeals found that Iqbal's claims did not require amplification, and affirmed the district court's judgment.  Id.; Iqbal, 490 F.3d at 157-58.

Citing concerns at the prospect of subjecting governmental officials to the burdens of discovery and the confusion about the Supreme Court's precedents interpreting Rule 8(a), Judge Jose Cabranes concurred in the court's ruling and invited the Supreme Court to address the appropriate pleading standard "at the earliest opportunity."  Iqbal, 490 F.3d at 178 (Cabranes, J., concurring).

The Court granted certiorari and reversed the Court of Appeals' decision. Ashcroft, 129 S.Ct. at 1945.  The Court noted Rule 8(a)'s requirement of a "short and plain statement of the claim showing that the pleader is entitled to relief."  See Fed. R. Civ. P. 8(a).  The Court expressly adopted Twombly's announcement that Rule 8 does not require "detailed factual allegations," but does require "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  Ashcroft, 129 S.Ct. at 1949

(quoting Twombly, 550 U.S. at 555).  The Court reaffirmed Twombly's determination that a complaint offering mere "labels and conclusions" or a "formulaic recitation of a cause of action" is insufficient to survive a motion to dismiss under Rule 12(b)(6).  Id.

The Court explained that to survive a motion to dismiss, the complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " Id. (quoting Twombly, 550 U.S. at 570). The plausibility standard requires that the plaintiff allege more than a "sheer possibility" that the defendant committed the alleged unlawful conduct, but does not impose a "probability requirement" at the pleading stage.  Id. (quoting Twombly, 550 U.S. at 556).  The plaintiff must, however, allege sufficient facts to "raise a reasonable expectation that discovery will reveal evidence of [the conduct complained of]."  Twombly, 550 U.S. at 556.  Where a plaintiff pleads facts that are merely consistent with a defendant's liability, he has not "nudged [his] claim across the line from conceivable to plausible," and the complaint must be dismissed.  Ashcroft, 129 S.Ct. at 1949 (citing Twombly, 550 U.S. at 547).  There is no heightened requirement of fact pleading of specifics—only a requirement that the plaintiff plead "enough facts to state a claim to relief that is plausible on its face."  Twombly, 550 U.S. at 570.

The Court identified two "working principles" underlying its decision in Twombly.  Ashcroft, 129 S.Ct. at 1949.  First, courts are not required to accept

as true legal conclusions "couched as [] factual allegation[s]" contained in a complaint.  Id. (citing Papasan v. Allain, 478 U.S. 265, 286 (1986)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Id. (quoting Twombly, 550 U.S. at 555). Rule 8 "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions."  Ashcroft, 129 S.Ct. at 1950.

Second, "only a complaint that states a plausible claim for relief survives a motion to dismiss."  Id.  This determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  Id. (quoting Iqbal, 490 F.3d, at 157-158.  Where the plaintiff's allegations are merely conclusory, the court may not infer more than the mere possibility of misconduct, and the complaint has *alleged*–but has not "show[n]"–that he is entitled to relief as required by Rule 8(a)(2).  Ashcroft, 120 S.Ct. at 1950.

The Court explained that a reviewing court should begin by identifying pleadings that are not entitled to the presumption of truth because they are merely conclusory.  Id.  Legal conclusions must be supported by factual allegations demonstrating the grounds for a plaintiff's entitlement to relief. Ashcroft, 129 S.Ct. at 1950; Twombly, 550 U.S. at 555; Fed. R. Civ. P. 8(a)(2). A court should assume the truth only of "well-pleaded factual allegations," and

then may proceed to determine whether the allegations "plausibly give rise to an entitlement to relief." Ashcroft, 129 S.Ct. at 1950.

**B.    Plaintiffs' Claims Against the Circuit Court Judges Are Barred By Judicial Immunity**

Simply stated, "[j]udges performing judicial functions enjoy absolute immunity from §1983 liability." Robinson v. Freeze, 15 F.3d 107, 108 (8th Cir. 1994).  Indeed, the Supreme Court has held fast to the doctrine of judicial immunity since the Court adopted the doctrine in Bradley v. Fisher, 13 Wall. 335, 20 L.Ed. 646 (1872).  Likewise, the Eighth Circuit Court of Appeals recognizes the concept of absolute judicial immunity.  See Childs v. Reynoldson, 777 F.2d 1305 (8th Cir. 1985) (quoting Smith v. Bacon, 699 F.2d 434, 436 (8th Cir.1983)("A judge is absolutely immune from liability if (1) the judge had subject matter jurisdiction, and (2) the acts complained of were judicial acts.").

Judicial immunity extends to all acts committed within a judge's judicial jurisdiction, because:

> [i]t is a judge's duty to decide all cases within his jurisdiction that are brought before him, including controversial cases that arouse the most intense feelings in the litigants. His errors may be corrected on appeal, but he should not have to fear that unsatisfied litigants may hound him with litigation charging malice or corruption. Imposing such a burden on judges would contribute not to principled and fearless decisionmaking but to intimidation.

Pierson v. Ray, 386 U.S. 547, 554 (1967).  The United States Supreme Court has made clear that "whether an act by a judge is a 'judicial' one relate [s] to

the nature of the act itself, *i.e.*, whether it is a function normally performed by a judge, and to the expectations of the parties, *i.e.*, whether they dealt with the judge in his judicial capacity." <u>Stump v. Sparkman</u>, 435 U.S. 349, 362 (1978). Clearly, important public policy interests underlie the doctrine of judicial immunity, a doctrine this court is bound to recognize where applicable.

A judge may be sued for money damages in only two circumstances: first, where his acts are "non-judicial"; and second, where his acts are "taken in the complete absence of all jurisdiction." <u>Howell v. Hofbauer</u>, 123 F. Supp. 2d 1178 (8th Cir. 2000) (citing <u>Liles v. Reagan</u>, 804 F.2d 493, 495 (8th Cir. 1986)). Here, there is no allegation in the Raineses' amended complaint that Judges Von Wald, Portra, or Myren played any role in plaintiffs' arrests and convictions other than to hear the cases, make various rulings with regard to civil litigation and criminal charges brought against plaintiffs, and to eventually adjudge the plaintiffs guilty. <u>See</u> Docket 1. Plaintiffs' allegations point to functions normally performed by Circuit Court judges and interactions in which plaintiffs dealt with these defendants in their respective judicial capacities. Plaintiffs' allegations fail to extend beyond the mere suggestion that "inferences could be drawn from [the defendant judges'] judicial decisions." <u>Pierson</u>, 386 U.S. 547 at 554, n.8. As discussed above, conclusory allegations do not suffice to withstand a motion to dismiss under Rule 12(b)(6). For the

reasons stated above, the court grants the motions to dismiss made by the three Circuit Court judges Von Wald, Portra, and Myren.

**C.     Plaintiffs' Claims Against the Prosecutors Are Barred by Quasi- or Prosecutorial Immunity**

It is well-settled that prosecutors are absolutely immune from liability in § 1983 suits brought to recover damages in "initiating a prosecution and presenting the State's case." Imbler v. Pachtman, 424 U.S. 409, 431 (1976). When judicial immunity is extended to non-judicial officers, it is "because their judgments are functionally comparable to those of judges-that is, because they, too, exercise a discretionary judgment as a part of their function." Robinson v. Freeze, 15 F.3d 107, 108 (8th Cir. 1994) (quoting Antoine v. Byers & Anderson, Inc., 508 U.S. 429, 436 (1993). Where a prosecutor's acts are "intimately associated with the judicial phase of the criminal process," absolute immunity applies "with full force." Imbler, 424 U.S. at 430 n.31. Prosecutorial immunity is based on considerations which include "concern that harassment by unfounded litigation would cause a deflection of the prosecutor's energies from his public duties, and the possibility that he would shade his decisions instead of exercising the independence of judgment required by his public trust." Imbler, 424 U.S. at 423.

Although absolute immunity does not apply where a prosecutor's acts are administrative or investigative, see Van Kamp v. Goldstein, 129 S.Ct. 855, 861 (2009) (quoting Imbler, 424 U.S. at 431, n.33), it does apply to quasi-

judicial acts.  In making the determination whether absolute immunity

attaches to a prosecutorial act, courts must consider the "nature of the

functions with which a particular official or class of officials has been lawfully

entrusted, and [the court must] seek to evaluate the effect that exposure to

particular forms of liability would have on the appropriate exercise of those

functions."  Richardson v. McKnight, 521 U.S. 399, 416 (1997) (quoting

Forrester v. White, 484 U.S. 219, 224 (1988)).  Thus, the Supreme Court has

clearly indicated that "immunity analysis rests on functional categories, not on

the status of the defendant."  Briscoe v. LaHue, 460 U.S. 325, 342 (1983).

Here, the plaintiffs' amended complaint identifies defendant Kimberly

Dorsett as "state [sic] attorney."  Defendant Mark McNeary is identified as

"state [sic] attorney and special prosecutor," and defendant Lori Ehlers is

identified as "deputy state [sic] attorney."  The amended complaint thus

identifies the capacity in which these three defendants acted, and the

allegations made by plaintiffs with regard to Ms. Dorsett, Mr. McNeary, and

Ms. Ehlers demonstrate that these defendants were engaged in activities taken

by them in their respective capacities as county prosecutors.  See Docket 50,

¶¶ 25, 26, 29.

State prosecutors are absolutely immune from liability under §1983 for

actions taken within the scope of their prosecutorial duties.  Imbler, 424 U.S.

at 420.  Nothing in plaintiff's amended complaint suggests that the acts

complained of and allegedly taken by defendants Ms. Dorsett, Mr. McNeary, or

Ms. Ehlers were acts other than those regularly taken by prosecutors in

initiating and prosecuting a states' case against a criminal defendant.  <u>See</u>

Docket 50.  As such, these three defendants are immune from §1983 liability

for the acts complained of, and defendants' motion to dismiss for failure to

state a claim under Rule 12(b)(6) should be granted.

**D.    Plaintiffs' Claims Against Private Attorneys and Douglas Kenny Fail as a Matter of Law**

While the prosecutors and the judges sued by Mr. and Mrs. Raines in

this case are protected by immunity, such is not the case for the three private

attorneys (Lonald Gellhaus, Carlyle Richards, and Bill Gerdes), nor for the

policeman, Douglas Kenny.  As to these four defendants, plaintiffs invoke the

following federal statutes in support of their claims:  42 U.S.C. §§ 1983 and

1985; 18 U.S.C. §§ 6(b)(1), 242, 1001, 1203, 1621-1622, and 1951; and

U.S.Const. Amend. 7.[11]  The plaintiffs also cite to various provisions of South

Dakota law.  Each of these bases for plaintiffs' claims against the private

attorneys and Mr. Kenny will be discussed in turn.

_____

[11]The plaintiffs also mistakenly cite *18* U.S.C. §§ 1983 and 1985.  The court assumes that plaintiffs intended to refer to *42* U.S.C. §§ 1983 and 1985, as they correctly cited those statutes elsewhere in their complaint.

### 1.    Plaintiffs' § 1983 Claims Fail as a Matter of Law

Section 1983 of Title 42 of the United States Code creates a private right of action for money damages against "a person acting 'under color of any statute . . . of any State' who deprives another of a federally protected right." Carlson v. Roetzel & Andress, 552 F.3d 648, 650 (8th Cir. 2008); 42 U.S.C. § 1983.  The Raineses have invoked section 1983 in support of the claims they assert in counts one, four, six, and thirteen of their amended complaint.  Those claims fail as a matter of law.

### a.    § 1983 Claims Premised on the Conduct of Plaintiffs' Criminal Cases Are Barred by Heck v. Humphries

In the case of Heck v. Humphries, 512 U.S. 477 (1994), Roy Heck had been convicted in Indiana state court of voluntary manslaughter for the death of his wife and sentenced to 15 years imprisonment.  Id. at 478.  While a direct appeal of his state court conviction was pending, Heck filed a damages action under 42 U.S.C. § 1983, alleging that the prosecutors and police in his case had violated his constitutional rights under color of state law by engaging in an unlawful, unreasonable and arbitrary investigation, knowingly destroying exculpatory evidence, and using an illegal voice identification procedure at trial.  Id. at 478-79.  Importantly, Heck did not seek any action from the district court which would have invalidated his conviction or caused him to be released from prison.  Id. at 479.

The Court began its analysis by noting that "§ 1983 creates a species of tort liability." Id. at 483. It then stated that Heck's claim in this case was most closely analogous to a common-law claim for malicious prosecution. Id. at 484. One element of malicious prosecution that a plaintiff must prove is that the prior criminal proceeding was resolved in favor of the plaintiff. Id. This, the court noted, "avoids parallel litigation over the issues of probable cause and guilt . . . and it precludes the possibility of the claimant succeeding in the tort action after having been convicted in the underlying criminal prosecution, in contravention of a strong judicial policy against the creation of two conflicting resolutions arising out of the same or identical transaction." Id. (quoting 8 S. Speiser, C. Krause, & A. Gans, American Law of Torts, § 28:5, at 24 (1991)).

The Court also noted that allowing a convicted defendant to bring a money action for damages based on the same prosecution would be tantamount to allowing a collateral attack on the criminal judgment. Id. at 485. The Court held "that civil tort actions are not appropriate vehicles for challenging the validity of outstanding criminal judgments" and that this principal applied equally to § 1983 actions. Id. Thus, in order to avoid the tension between the finality of a criminal judgment and a civil action for damages arising out of that criminal prosecution, the Court held that a § 1983 plaintiff who seeks damages arising out of an allegedly unconstitutional conviction or imprisonment or for any other injury caused by actions whose

unlawfulness would render a criminal judgment invalid, "a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." Id. at 486-87. "A claim for damages bearing that relationship to a conviction or sentence that has *not* been so invalidated is not cognizable under § 1983." Id. at 487.

The holding in Heck v. Humphries is directly on point as to all of the Raineses' claims arising out of the criminal proceedings against them. They allege that these three private attorneys, acting on their own and in conspiracy with the prosecutors and others, violated the Raineses' constitutional rights in the following ways: (1) by contacting the prosecutor and falsely telling the prosecutor that the Raineses had violated criminal statutes in the handling of Velma's probate; (2) by soliciting perjured testimony and presenting that testimony before the grand jury; (3) by excluding plaintiffs from the grand jury selection process; (4) by arresting them (or in plaintiffs' words, "kidnapping") on an arrest warrant based on unconstitutional charges; (5) by depriving them of their constitutional right to confront and cross-examine witnesses at trial; (6) by depriving them of their right to present exculpatory evidence at trial; and (7) by depriving them of due process rights by introducing argument at trial that was not based on evidence admitted at the trial.

Since plaintiffs' criminal convictions have not been invalidated or called into question in any way by any entity with the authority to call those convictions into question, all of these allegations made by the Raineses which arise out of their criminal cases fall squarely within the prohibition in <u>Heck</u>. None of these claims for damages could be entertained without concomitantly calling into question the validity or constitutionality of the Raineses' underlying state court criminal convictions or their current incarceration.

The court notes that its recommendation for dismissal of the Raineses' § 1983 claims based on events connected with their criminal case does not prevent them from raising allowed forms of collateral attack. For example, they remain free to seek relief on a petition for a writ of habeas corpus in state court or, after presenting their claims to the highest state court, in federal court. However, a § 1983 action for damages based on the criminal cases cannot be allowed under the current posture of the case.

The court notes that every claim asserted against Douglas Kenny (counts six, seven, eight, nine, fifteen, and sixteen) and every claim against Bill Gerdes (counts thirteen, fourteen, fifteen, and sixteen), all arise out of the conduct of plaintiffs' criminal trials. Thus, this court recommends dismissal of all § 1983 claims against these two individuals pursuant to <u>Heck</u>. In addition, count six asserted against Lonald Gellhaus should be dismissed for the same reason.

### b. Private Attorneys Are Not "State Actors" Under § 1983

Lonald Gellhaus, Carlyle Richards, and Bill Gerdes are all private attorneys. Mr. Gellhaus and Mr. Richards represented parties adverse to the plaintiffs in Velma's probate proceedings. Mr. Gerdes was appointed by the state court to represent plaintiff Allen Raines in his criminal proceedings. A state actor under § 1983 is one who is exercising power "possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." See Polk County v. Dodson, 454 U.S. 312, 317-18 (1981) (quoting United States v. Classic, 313 U.S. 299, 326 (1941)). Neither a private attorney obtaining actions through a civil lawsuit, nor a public defender whose services are being paid for out of the public fisc are state actors under § 1983. Dodson, 454 U.S. at 319-320, 324-25; Carlson, 552 F.3d at 650-51. Hence, Mr. Gellhaus, Mr. Richards and Mr. Gerdes cannot, by themselves, satisfy the requirement that the alleged deprivation of the Raineses' constitutional rights was done under color of state law.

However, private attorneys, though they are not state actors themselves, may conspire with state court judges or other state officials, who *are* state actors, to deprive a prisoner of his constitutional rights in violation of 42 U.S.C. § 1983. See Tower v. Glover, 467 U.S. 914, 923 (1984); Carlson, 552 F.3d at 651; Manis v. Sterling, 862 F.2d 679, 681 (8th Cir. 1988). "Allegations of conspiracy, however, must be pled with sufficient specificity and factual

support to suggest a 'meeting of the minds.' " Manis, 862 F.2d at 681 (citing Smith v. Bacon, 699 F.2d 434, 436 (8th Cir. 1983) (per curiam)).

In the Manis case, the plaintiff pled in his complaint the allegation that the court-appointed public defenders who had represented him in a criminal action in state court had conspired with the state court judges. Id. Manis stated that the state court judges knew that Manis' lawyer was not vigorously prosecuting Manis' state post-conviction actions, yet "did nothing to rectify the situation." Id. The court found that these allegations were insufficient to support an inference that the public defenders and the state-court judges had a "meeting of the minds" and reached an agreement to delay or hinder Manis' case for post-conviction relief. Id.

Here, the only § 1983 claims left for consideration after application of the rule in Heck v. Humphries are the claims associated with Velma's probate estate. In count one, the Raineses allege that Mr. Richards and Mr. Gellhaus, along with the state court judge and others, deprived Allen Raines of his right to discharge claims in his absolute discretion by terms of [Velma's] will. Count one also alleges that these defendants denied Allen Raines of his due process rights by denying him his opportunity to present his case in court. This allegation fails under the Manis case, as well as under Twombly, because the count contains no allegation that these parties made an agreement to exact these alleged deprivations of Mr. Raineses' rights. Manis, 862 F.2d at 681. As

34

the <u>Twombly</u> Court said, the pleading of one's claim must plausibly suggest that an agreement among the defendants was reached; pleading facts which are merely consistent with such an agreement does not satisfy the pleading requirements under Rule 8. <u>Twombly</u>, 550 U.S. at 556-57. Accordingly, this court recommends dismissal of count one.

Likewise, count four against Mr. Gellhaus alleges that he acted together with the state court judge to fail to accord Mr. Raines of his right to a jury trial on the probate matter by entering default judgment against Mr. Raines. This count does not even contain an allegation of a conspiracy between Mr. Gellhaus and a state actor, let alone an allegation with sufficient specificity to enable the court to infer that there was a meeting of the minds. Count four should be dismissed as well. <u>Twombly</u>, 550 U.S. at 556-57; <u>Carlson</u>, 552 F.3d at 650-51 (dismissing § 1983 claim against private lawyer against whom it is alleged that she invoked state court power to represent her client, but against whom it was never alleged that she entered into an agreement or conspiracy to deprive plaintiff of his rights with a state actor). <u>See also</u> <u>Miller v. Compton</u>, 122 F.3d 1094, 1097-98 (8th Cir. 1997) (private attorney could not be held liable under § 1983 without an allegation that the attorney was a willing participant in an agreement with a state actor to deprive the plaintiff of his constitutional rights).

## 2. Plaintiffs' § 1985 Claims Fail as a Matter of Law Because There is No Allegation of Race or Class-Based Discrimination

Section 1985 of Title 42 of the United States Code has three sections. The first deals with conspiracies designed to prevent a person from holding or carrying out the duties of any office, trust, or place of confidence under the United States. <u>See</u> 42 U.S.C. 1985(1). The second deals with conspiracies to interfere with, intimidate or threaten any party or witness in any federal court. <u>Id.</u> at (2). The third is the only section that might pertain to plaintiffs' claims. It provides, in pertinent part, as follows:

> If two or more persons in any State or Territory conspire or go in disguise on the highway or on the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws; . . . in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or depraived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

<u>See</u> 42 U.S.C. 1985(3).

The Supreme Court, interpreting this third subsection of § 1985, has stated that it does not itself provide any substantive, protected rights to a class. <u>United Brotherhood of Carpenters and Joiners of America, Local 610 v.</u>

Scott, 463 U.S. 825, 833 (1983). Rather, the "rights, privileges, and immunities that § 1985(3) protects must be found elsewhere, . . ." Id. The Court went on to hold that § 1985(3) is not a "general federal tort law" that provides for recovery whenever two or more persons conspire to commit a tort against another. Id. at 833-34. Instead, the reach of § 1985(3) is limited by the requirement that a plaintiff plead and prove that the defendants acted with "some racial, or perhaps otherwise class-based, invidiously discriminatory animus" which motivated the conspirators' actions. Id. at 834 (quoting Griffin v. Breckenridge, 403 U.S. 88, 102 (1971)). Requiring claimants to prove race-based animus, or other class-based discriminatory intent, was in keeping with "the predominate purpose of § 1985(3)," which was "to combat the prevalent animus against Negroes and their supporters." Id. at 836.

There is no allegation anywhere in the Raineses' complaint that any of the defendants, (but here the court is concerned with the private attorneys and policeman Kenny), were motivated in their actions against the Raineses with any racially discriminatory intent or any other class-based animus. Therefore, the Raineses' claims premised on § 1985 must fail as against all the private defendants. Scott, 463 U.S. at 833-36. The court recommends dismissing all § 1985 claims (counts two, three, five, seven, eleven, twelve, thirteen, and fourteen) against any defendant in this case for the reason that no race-based or class-based animus is alleged in the amended complaint.

### 3.     Plaintiffs' Claims Premised on Other Federal Laws Fail

#### a.     The Seventh Amendment Provides No Remedy Here

The Seventh Amendment to the United States Constitution provides that "[i]n suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved, and no fact tried by a jury shall be otherwise reexamined in any Court of the United States, than according to the rules of the common law." <u>See</u> U.S. Const., Amend. VII.[12]

Here, the state court judge entered a default judgment against the Raineses in Velma's probate proceeding.  In count four of their amended complaint, the plaintiffs assert that Lonald Gellhaus, acting with the state court judge and Ronald and LaDonna Hollingsworth, "failed to accord a right of trial by jury during the default judgment hearing . . ." in violation of the Seventh Amendment.  Default judgment is a procedure applicable in civil, not criminal, proceedings, so the court assumes this allegation applies to the probate proceedings.

Once a default judgment has been entered, a party's right to a jury trial under the Seventh Amendment is extinguished.  <u>Brown v. Ban Braam,</u> 3 U.S.

---

[12]SDCL § 29A-1-306 provides a right of jury trial, if demanded, in formal testacy proceedings and any proceeding in which any controverted question of fact arises as to which any party has a constitutional right to trial by jury. Under this provision, even if the right of trial by jury does not apply in a particular case, or if that right applies and is waived, the state court nevertheless retains discretion to call a jury to decide an issue of fact in an advisory capacity.  <u>Id.</u>

344, (1797); <u>Olcott v. Delaware Flood Co.</u>, 327 F.3d 1115, 1124 (10th Cir. 2003); <u>Graham v. Malone Freight Lines, Inc.</u>, 314 F.3d 7, 16 (1st Cir. 1999); <u>Adriana Internat'l. Corp. v. Thoeren</u>, 913 F.2d 1406, 1414 (9th Cir. 1990); <u>Midland Contracting Co. v. Toledo Foundry and Machine Co.</u>, 154 F. 797 (7th Cir. 1907); <u>Mwani v. Bin Ladin</u>, 244 F.R.D. 20, 24 (D.D.C. 2007); <u>Frankart Distributors, Inc. v. Levitz</u>, 796 F. Supp. 75, 76-77 (E.D.N.Y. 1992).

Here, plaintiffs do not allege that there was anything irregular or violative of their rights in the entry of default against them. Rather, they allege that their right to a jury trial under the Seventh Amendment was violated. As can be seen from the above authorities, plaintiffs had no right to a jury trial once default was entered.

Furthermore, plaintiffs' citation in court four to the Seventh Amendment is in conjunction with a simultaneous citation to 42 U.S.C. § 1983 in the same paragraph. The court understands this to mean that plaintiffs assert a cause of action under § 1983 for the violation of their constitutional rights under the Seventh Amendment. This claim fails for the reasons discussed at length above: namely, that Mr. Gellhaus is not a state actor, nor is he alleged to have entered into a meeting of the minds with a state actor to bring about this deprivation of rights. As already discussed, Judge Von Wald is protected by judicial immunity from this claim.

### b. 18 U.S.C. § 6 Does Not Support Plaintiffs' Claims.

Plaintiffs cite to 18 U.S.C. § 6(b)(1) in support of their claim contained in count ten of their amended complaint. No such citation exists as 18 U.S.C. § 6 has no subsections. Instead, § 6 of Title 18 is a single unit and defines the words "department" and "agency" as they are used in Title 18, which is generally the criminal code. No claim is stated that is supported by 18 U.S.C. § 6.

### c. 18 U.S.C. § 1001 Does Not Apply

Section 1001 of Title 18 criminalizes the making of a false or fraudulent statement if the matter in which the statement is made is a matter within the jurisdiction of the United States government, either its executive, legislative, or judicial branch. See 18 U.S.C. § 1001. Plaintiffs cannot state a claim under this provision because both Velma's probate action and the twin criminal prosecutions were matters wholly within the law of the state of South Dakota. There was no federal jurisdiction over either of those matters. See McAninch v. Wintermute, 491 F.3d 759, 766 (8th Cir. 2007) (holding that matters concerning the probate or annulment of a will and the administration of a decedent's estate are reserved exclusively to state courts); SDCL §§ ch. 22-1 et seq. (outlining jurisdiction in South Dakota state courts for crimes of theft). Thus, even if section 1001 implied a private right of action for damages, plaintiffs' reliance on this statute to recover in this case is misplaced because a

prerequisite for application of § 1001 is that federal jurisdiction have existed in the matter where the false statement was offered. Accordingly, the court recommends dismissal of counts five and six because they are premised on 18 U.S.C. § 1001.

### d. 18 U.S.C. § 242 Does Not Support Plaintiffs' Claims

Plaintiffs' citation to 18 U.S.C. § 242 is likewise unavailing. Section 242 statute makes it a misdemeanor to deprive any person in any State, under color of law, of his rights, privileges, or immunities secured or protected by the Constitution or laws of the United States or to subject any person to different punishment, pains, or penalties on account of his color, or race, than are prescribed for the punishment of citizens. See 18 U.S.C. § 242. This statute provides no private right of action for damages or injunctive relief. It is the criminal counterpart to § 1983 and plaintiffs' attempt to plead a claim under § 242 fails. Any private right of action along these lines must fail or succeed under § 1983. For the reasons discussed above, plaintiffs' § 1983 claims fail as a matter of law. Therefore, the court recommends dismissal of all counts (one, four, and fifteen) premised on 18 U.S.C. § 242.

### e. No Private Right of Action Arises Under 18 U.S.C. § 1951

A criminal statute does not imply a private right of action unless Congress so intended in enacting the criminal statute. Wisdom v. First Midwest Bank, 167 F.3d 402, 407 (8th Cir. 1999) (citing Thompson v.

Thompson, 484 U.S. 174, 179 (1988)).  Courts consider four factors in deciding

whether Congress intended to imply a private right of action from a criminal

statute:  (1) whether the plaintiff is a member of the class for whose benefit the

statute was enacted; (2) whether Congress intended, explicitly or implicitly, to

create such a remedy; (3) whether a private remedy is consistent with the

underlying legislative scheme; and (4) whether a private right based on a

federal statute would in interfere with an area relegated to state law.  Id. at

407-08.

The Eighth Circuit has already applied these four factors to 18 U.S.C.

§ 1951 and found that no private right of action is implied.  See Wisdom, 167

F.3d at 407-09.  This court reaches the same conclusion.  Id.  Accordingly, this

court recommends dismissal of count sixteen, which is premised on 18 U.S.C.

§ 1951.

### f.      Plaintiffs Cannot State a Claim Under 18 U.S.C. § 1203

Section 1203 makes it a crime to take hostages.  See 18 U.S.C. § 1203.

Specifically, it is a crime under § 1203 to seize or detain and threaten to kill,

injure, or continue to detain another person in order to compel a third person

or a governmental organization to do something, or to abstain from doing

something, as a condition of the release of the person being detained.  Id.

Even if, under the Thompson factors, this court could conclude that

Congress intended to create a private right of action under § 1203, it is clear

that plaintiffs cannot make a *prima facie* case. The Raineses do claim they were "kidnapped" when they were arrested at their home in Ohio on the South Dakota state arrest warrant and brought to South Dakota. However, the Raineses never allege in their amended complaint that they were kidnapped in order to force a third party to take some action or abstain from taking some action and that they were being kidnapped in order to bring about this result. Accordingly, the court recommends dismissal of count fifteen of the Raineses' amended complaint because it is based on 18 U.S.C. § 1203.

### g. 18 U.S.C. §§ 1621-1622 Are Unavailing

Section 1621 of Title 18 of the United States Code makes it a crime to lie under oath "in any case in which a law of the United States authorizes an oath to be administered." <u>See</u> 18 U.S.C. § 1621. Section 1622 makes it a crime to procure another to commit any perjury. <u>See</u> 18 U.S.C. § 1622. Although the Raineses have allleged that the private attorneys and Mr. Kenney lied under oath or solicited such lies, the oath that would have been required that made their statements perjurious was an oath required by state law, not by federal law. Once again, even if the <u>Thompson</u> factors indicated that Congress intended to create a private right of action under sections 1621 and 1622 (an issue as to which this court offers no opinion), the plaintiffs cannot make out a *prima facie* case because the oaths that were required of the private attorneys and Mr. Kenny were required under state law, not under federal law. Thus, the

court recommends dismissal of counts eight and nine, which are premised on these two statutes.

**F.    The Court Recommends Against Exercising Supplemental Jurisdiction**

Plaintiffs have included in their complaint numerous citations to provisions of South Dakota law, both statutory and constitutional. It is not clear whether the plaintiffs are asserting any state law claims, or whether their claim is that the abridgement of rights guaranteed to them under state law results in the violation of their federal constitutional rights. The court has already concluded that plaintiffs have failed to state any claims upon which relief may be granted under federal law. If plaintiffs are asserting any claim as to the former, this court recommends dismissal of those claims without prejudice.

This court's supplemental jurisdiction is codified at 28 U.S.C. § 1367, which supplanted the former concepts of pendent and ancillary jurisdiction when it was enacted in December, 1990. Subsection (a) of the statute grants courts jurisdiction over state law claims if the court also has original jurisdiction over other claims, so long as the federal and state claims are "so related . . . that they form part of the same case or controversy under Article III of the United States Constitution." See 28 U.S.C. § 1367(a). However, under subsection (c) of that statute, district courts may decline to exercise supplemental jurisdiction over state law claims if, among other circumstances,

the court dismisses all claims over which it has original jurisdiction.  28 U.S.C. § 1367(c).

Here, the court has recommended dismissing all state and federal claims against the three judges named as defendants as well as the three prosecutors named as defendants.  The court has also recommended dismissing all federal claims against the three private attorneys and policeman Kenny.  Thus, all that remains are the state law claims against four of the defendants.  The court recommends that the district court decline to exercise jurisdiction over any state law claims against these four defendants and dismiss these four defendants entirely from this case.

It is within the district court's discretion to either entertain the state law claims after dismissal of the federal claims, or to dismiss the state law claims without prejudice.  Quinn v. Ocwen Federal Bank FSB, 470 F.3d 1240, 1249 (8th Cir. 2006); Innovative Home Health Care, Inc. v. P.T.-O.T. Associates of the Black Hills, 141 F.3d 1284, 1288 (8th Cir. 1998).  In deciding whether to exercise supplemental jurisdiction or not under such circumstances, the court should balance factors such as "judicial economy, convenience, fairness and comity in regard to exercise of supplemental jurisdiction over pendent state law claims."  Quinn, 470 F.3d at 1249.

The considerations in this case that counsel in favor of dismissing without prejudice the state law claims are as follows.  The federal claims are

recommended to be dismissed.  In <u>United Mine Workers of America v. Gibbs</u>,

383 U.S. 715, 726-27 (1966), decided under the previous doctrine of pendent

jurisdiction, the Court held that a district court could exercise discretionary

jurisdiction over state law claims pleaded along with federal-question claims,

but if the federal claims were dismissed, the Court stated that, "[c]ertainly . . .

the state claims should be dismissed as well." <u>Id.</u> at 726.

In addition, the state law claims remaining in this case arise solely out of

the alleged actions the private attorneys took in regard to the probate of Velma

Hollingsworth.  Probate is an area of the law reserved almost exclusively to

state courts.  <u>McAninch</u>, 491 F.3d at 766.  Hence, federal courts have little

experience or knowledge of probate law and procedure to draw on.  South

Dakota state courts, on the other hand, handle probate cases routinely.

Finally, the dismissal of the federal claims in this case is being

recommended at the very beginning of the case prior to any discovery

occurring.  Reasons of comity and judicial economy therefore weigh in favor of

dismissing the state law claims without prejudice to plaintiffs' ability to file

those claims in state court.  For all these reasons, this court recommends that

the district court decline to exercise supplemental jurisdiction over plaintiffs'

state law claims in this case.  28 U.S.C. § 1367(c).

**G.      Plaintiffs' Motions Are Moot**

Plaintiffs have several motions of their own making that are pending. Plaintiffs filed a motion asking this court to transfer their criminal cases to Ohio, [Docket No. 13]; to issue an injunction preventing the state court from sentencing the plaintiffs on their criminal convictions, [Docket Nos. 18, 22]; to dismiss the guilty verdicts entered in state court against the plaintiffs, [Docket Nos. 19, 21]; and to remove the plaintiffs' criminal cases to federal district court, [Docket Nos. 57, 58]. These motions are all rendered moot by virtue of this court's recommendation that all of the plaintiffs' claims be dismissed.

## CONCLUSION

Based on the foregoing, the court recommends the following:

1.      The motion of the circuit court judges, Jack Von Wald, Tony Portra, and Scott Myren [Docket No. 26] be GRANTED.

2.      The motion of the prosecutors, Mark McNeary, Lori Ehlers, and Kimberly Dorsett [Docket No. 36] be GRANTED.

3.      The motion of the private attorneys, Lonald Gellhaus [Docket No. 40], Carlyle Richards [Docket No. 51], and Bill Gerdes [Docket No. 65], be GRANTED.

4.      The motion of policeman Douglas Kenny [Docket No. 81] be GRANTED.

5. All of the plaintiffs' motions [Docket Nos. 13, 18, 19, 21, 22, 57, and 58] be DENIED as moot.

**NOTICE TO PARTIES**

The parties have ten (10) days after service of this report and recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1), unless an extension of time for good cause is obtained. Failure to file timely objections will result in the waiver of the right to appeal questions of fact. Objections must be timely and specific in order to require *de novo* review by the district court. See Thompson v. Nix, 897 F.2d 356 (8th Cir. 1990); Nash v. Black, 781 F.2d 665 (8th Cir. 1986).

Dated September 2, 2009.

BY THE COURT:

/s/ *Veronica L. Duffy*

VERONICA L. DUFFY
UNITED STATES MAGISTRATE JUDGE